IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11–cv–01497–WJM–KMT

DAVID K. JENNER,

    Plaintiff,

v.

CAPT. WILLIAM SOKOL (official capacity),
AMY COSNER (individual and official capacity),
TERESA REYNOLDS (individual and official capacity), and
COLORADO DEPARTMENT OF CORRECTIONS (official capacity),

    Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

    This case comes before the court on Defendants' "Motion to Dismiss in Part Pursuant to Fed. R. Civ. P. 12(b)(6)" (Doc. No. 11 [Mot.], filed August 29, 2011). Plaintiff did not file a response. The motion is ripe for the court's recommendation.

### I.    STATEMENT OF THE CASE

    Plaintiff is a *pro se* inmate who alleges Defendants have violated his religious rights under the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA). (Compl. at 4.) Specifically, Plaintiff, who is Jewish, alleges he has been deprived of religious services and necessary items to fulfill the services. (*Id.* at 5, ¶ 1.) Plaintiff alleges his attempts to purchase the necessary items at his expense or to have the items donated have been denied by the defendants. (*Id.*) Plaintiff also alleges Defendants Reynolds and Cosner retaliated

against him for exercising his constitutional rights to access the courts or file grievances in violation of the First Amendment. (*Id.*) Plaintiff brings suit against Defendants Cosner and Reynolds in their individual and official capacities and against Defendants Sokol and the CDOC in their official capacity. (*Id.* at 2–3.) Plaintiff seeks injunctive relief, nominal damages, and punitive damages. (*Id.* at 10.)

Defendants seek dismissal of Plaintiff's claims for monetary damages from the CDOC or the defendants in their official capacities as barred by the Eleventh Amendment. (Mot. at 3–4.) Defendants also seek dismissal of Plaintiff's First and Second Claims for Relief for failure to state a claim upon which relief can be granted. (*Id.* at 4–13.) Finally, Defendants seek dismissal of the monetary claims against them in their individual capacities on the basis of qualified immunity. (*Id.* at 13–14.)

## II.     LEGAL STANDARDS

### A.     **Pro Se** *Plaintiff*

Plaintiff is proceeding *pro se.* The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). *See also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has

violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). *See also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). The plaintiff's *pro se* status does not entitle him to application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

### B.     *Failure to State a Claim Upon Which Relief Can Be Granted*

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) (2007). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 1949–51. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 1951. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 1950.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc., v. Texas Waste Mgmt.*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1940. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 1949 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*,129 S. Ct. at 1949 (citation omitted).

## III.  ANALYSIS

### A.  *Eleventh Amendment Immunity*

The CDOC Defendants argue that Plaintiff's claims for nominal and punitive damages against them in their official capacities are barred by the Eleventh Amendment. The Eleventh Amendment to the United States Constitution states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. It has been interpreted to bar a suit by a citizen against the citizen's own state in federal court. *Johns v. Stewart*, 57 F.3d 1544, 1552 (10th Cir. 1995). Suits against state officials in their official capacity should be treated as suits against the state. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). This is because a suit against a state official in his or her official capacity is a suit against the official's office and therefore is no different from a suit against the state itself. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment thus shields state officials, acting in their official capacities, from claims for monetary relief. *See Hill v. Kemp*, 478 F.3d 1236, 1255-56 (10th Cir. 2007). Moreover, a section 1983 action may only be brought against a person. *See* 42 U.S.C. § 1983. Neither states nor state officers sued in their official capacity for monetary damages are persons within the meaning of section 1983. *Will*, 491 U.S. at 70-71.

Plaintiff's claims for monetary relief against the CDOC defendants in their official capacities constitute claims against the Colorado Department of Corrections. *See Will*, 491 U.S. at 71. Therefore, Plaintiff's official-capacity claims for monetary relief against the CDOC

defendants are barred by the Eleventh Amendment and should be dismissed for lack of subject matter jurisdiction. *See id.*; *Hunt v. Bennett*, 17 F.3d 1263, 1267 (10th Cir. 1994).

### B.      *Religious Freedom Claims*

In his First Claim for Relief, Plaintiff alleges he has been deprived of the ability freely to practice his religion because Defendants have not allowed him to have items necessary to complete the tenets of his Jewish faith. (Compl. at 4–5.) Plaintiff also alleges some inmates "who do not have sincere Jewish beliefs" have been allowed to participate in Passover services, thereby "cheapening" the faith. (*Id.* at 4.)

#### 1.      *Free Exercise Claim*

"It is well-settled that '[i]nmates . . . retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion.' " *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, (1987)). "Yet such protections are not without reasonable limitations." *Kay*, 500 F.3d at 1218. "The Supreme Court has cautioned that prison inmates are also subject to the 'necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.' " 500 F.3d at 1218 (quoting *O'Lone*, 482 U.S. at 348). "Accordingly, the Court has held that a prison regulation imping[ing] on inmates' constitutional rights . . . is valid if it is reasonably related to legitimate penological interests." *Id.* (internal quotation marks and citation omitted).

"Thus, in order to allege a constitutional violation based on a free exercise claim, a prisoner-plaintiff must survive a two-step inquiry." *Kay*, 500 F.3d at 1218. "First, the

prisoner-plaintiff must first [sic] show that a prison regulation 'substantially burdened . . . sincerely-held religious beliefs.' " 500 F.3d at 1218 (quoting *Boles v. Neet*, 486 F.3d 1177, 1182 (10th Cir. 2007)). "Second, prison officials-defendants may 'identif[y] the legitimate penological interests that justif[ied] the impinging conduct.' " *Id.* (quoting *Boles*, 486 F.3d at 1182). "The burden then returns to the prisoner to 'show that these articulated concerns were irrational.' " *Id.* at 1219 n.2 (quoting *Salahuddin v. Goord*, 467 F.3d 263, 275 (2d Cir. 2006)).

> "At that point, courts balance the factors set forth in *Turner v. Safley*, 482 U.S. 78, 89–91 (1987), to determine the reasonableness of the regulation: (1) whether a rational connection exists between the prison policy regulation and a legitimate governmental interest advanced as its justification; (2) whether alternative means of exercising the right are available notwithstanding the policy or regulation; (3) what effect accommodating the exercise of the right would have on guards, other prisoners, and prison resources generally; and (4) whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights.

*Id.* at 1219 (citation omitted).

### *a.     Sincerely Held Belief*

Plaintiff asserts he is Jewish. The defendants apparently do not challenge the sincerity of Plaintiff's beliefs. Regardless, " '[t]he inquiry into the sincerity of a free-exercise plaintiff's religious beliefs is almost exclusively a credibility assessment, . . . and therefore the issue of sincerity can rarely be determined on summary judgment,' let alone a motion to dismiss." *Kay*, 550 F.3d at 1219 (quoting *Snyder v. Murray City Corp.*, 124 F.3d 1349, 1352–53 (10th Cir. 1997)). "Summary dismissal on the sincerity prong is appropriate only in the very rare case[ ] in which the plaintiff's beliefs are so bizarre, so clearly nonreligious in motivation that they are not entitled to First Amendment protection." *Id.* at 1353 (internal quotations omitted) (alteration in

original). Similarly, it is unnecessary for Plaintiff to show that the use of certain items are "necessary" to the practice of his religion if his belief in their use is sincerely held. *Id.* at 1220. Therefore, reviewing Plaintiff's Complaint, and taking the factual allegations as true, the court finds sufficient factual support exists to plausibly conclude that Plaintiff is a sincere devotee of the Jewish faith and that the religious services and the items he seeks are necessary to the practice of his religion.

Next, the court addresses Plaintiff's claim for injunctive relief to prevent other inmates who have not shown their "sincere Jewish beliefs" from participating in Passover services. (Compl. at 5, ¶¶ 2.G. and 3.) To assert a free exercise claim, Plaintiff must show that the defendants' policy "substantially burdened *his* sincerely-held religious beliefs." *Boles*, 486 F.3d at 1182 (emphasis added). In his Complaint, Plaintiff does not assert that *his* religious beliefs have been "substantially burdened" by the participation of inmates he feels may not be sincere followers of the Jewish faith. Rather, Plaintiff concedes that the Passover services have been allowed, and states only that the Jewish faith is "cheapened" by allowing inmates who says they are Jewish to participate Passover services without first showing that their beliefs are sincerely held. (Compl. at 5, ¶ 3.) Therefore, Plaintiff's claim in this regard fails. Moreover, just as this court is not inclined to make a credibility assessment at this time as to the sincerity of Plaintiff's religious sincerity, *Kay*, 550 F.3d at 1219, the court also is not inclined to make a credibility assessment regarding the religious beliefs of unknown inmates.

### b.     *Legitimate Penological Interest*

Defendants' motion is devoid of any argument as to Plaintiff's allegations that the defendants have refused to allow him access to items such as candles, a lighter to light the candles, pre-fast and break-fast meals for fasting periods; traditional foods; and Sukkoh materials.  Likewise, Defendants have failed to address Plaintiff's claim that he has been deprived of religious services.  Therefore, it would be inappropriate for the court to dismiss Plaintiff's claim related to these allegations at this time.

Defendants' only argument is that the CDOC's refusal to subsidize religious practices such as purchasing juice and/or wine for Plaintiff does not constitute a substantial burden on the exercise of his religion.  However, the court notes that Plaintiff has not asked for subsidization by the CDOC or for the CDOC to provide the items he seeks free of charge.  Rather, Plaintiff seeks either to obtain the items at his own expense (through either current or alternative vendors) or to obtain donations of the items.

Moreover, Defendants have failed to address whether there is a legitimate penological interest that justifies the defendants' refusal to allow Plaintiff to provide juice or wine, at his own expense, from outside vendors or through donation.  While the defendants may be able to show at a later time that there are legitimate penological interests that justify limiting Plaintiff's access to juice or wine from outside vendors or donation, the court is unable to complete the four-factor balancing analysis set forth by the Supreme Court in *Turner v. Safley*.

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's exercise claim as it relates to obtaining items he feels are necessary to practice his Jewish faith and to the alleged

deprivation of religious services should be denied. Defendants' motion to dismiss Plaintiff's claim for injunctive relief to prevent other inmates who have not shown their "sincere Jewish beliefs" from participating in Passover services should be granted for failure to state a claim upon which relief can be granted.

### 2. *RLUIPA Claim*

The standards under RLUIPA are different from those under the Free Exercise Clause. *Kay*, 500 F.3d at 1221. RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability," unless the government demonstrates that the burden furthers a "compelling governmental interest," and does so by "the least restrictive means." 42 U.S.C. § 2000cc-1(a)(1)-(2). "Religious exercise" includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). "The 'exercise of religion' often involves not only belief and profession but the performance of . . . physical acts [such as] assembling with others for a worship service [or] participating in sacramental use of bread and wine . . . ." *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005) (quoting *Employment Div. Dept. of Human Resources of Ore. v. Smith*, 494 U.S. 872, 877 (1990)).

A plaintiff bears the initial burden of establishing "the prima facie existence" of a substantial burden on his religious exercise. *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005). To survive a motion to dismiss, a RLUIPA complaint must adequately allege the following: (1) that the plaintiff wishes to engage in a religious exercise; (2) that this wish is

motivated by a sincerely held belief; and (3) that the exercise is subject to a substantial burden imposed by the government. *See Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1312 (10th Cir. 2010).

Because RLUIPA requires a state government to affirmatively permit and accommodate religious exercise by incarcerated persons, the government's burden when defending against a prisoner's RLUIPA claim is more onerous than its burden when defending against a prisoner's constitutional claim. *See Jotunbane v. Sedillo*, No. CIV 06–809 JB/RHS, 2010 WL 1781922, at *5 (D.N.M. Apr. 20, 2010). Therefore, a prisoner plaintiff should, in theory, survive motions to dismiss and motions for summary judgment significantly more often when proceeding under RLUIPA. *Id.*; *see, e.g., Abdulhaseeb*, 600 F.3d at 1316–17 (finding that a prisoner presented a genuine issue of material fact as to whether the denial of his requests for an Islamic diet burdened his religious exercise); *Rowe v. Davis*, 373 F.Supp.2d 822, 827 (N.D. Ind. 2005) (finding that a prisoner's complaint that a prison official prevented him from meeting with a religious leader was sufficient to survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss).

As to the first element of a RLUIPA claim, Plaintiff has stated he wishes to practice the Jewish faith and engage in religious observances of the Jewish faith; thus the court finds that Plaintiff wishes to engage in religious conduct. As to the second element of a RLUIPA claim, as explained *supra*, because evaluating the sincerity of Plaintiff's beliefs is "almost exclusively a credibility assessment," the court finds that conclusively determining whether his beliefs are sincerely held would be "premature at this stage." *Kay*, 500 F.3d at 1219.

The court next considers the third element of Plaintiff's RLUIPA claim, *i.e.*, whether Plaintiff has adequately alleged that his exercise of the Jewish faith is subject to a substantial burden. While it is clear that RLUIPA's protection extends beyond practices that are central to a religion, 42 U.S.C. § 2000cc–5(7)(A), it is equally clear that not every infringement on religious exercise will constitute a substantial burden. *Abdulhaseeb*, 600 F.3d at 1316. "The practice burdened need not be central to the adherent's belief system, but the adherent must have an honest belief that the practice is important to his free exercise of religion." *Id.* (citing *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 332 (5th Cir. 2009)). In short, a burden on religious exercise is "substantial" under RLUIPA if it denies a plaintiff "reasonable opportunities" to engage in such exercise. *Caruso v. Zenon*, No. 95–MK–1578, 2005 WL 5957978, at *17 (D. Colo. July 25, 2005); *see also Smith v. Allen*, 502 F.3d 1255, 1278 (11th Cir.2007) ("[A]t a minimum the substantial burden test requires that a RLUIPA plaintiff demonstrate that the government's denial of a particular religious . . . observance was more than an inconvenience to one's religious practice.")

The Court of Appeals for the Tenth Circuit has provided several examples of when a burden on religious exercise becomes "substantial." In *Abdulhaseeb*, the Circuit held that the government imposes a "substantial burden" on a prisoner within the meaning of RLUIPA when it does any of the following: (1) requires participation in an activity prohibited by a sincerely-held religious belief; (2) prevents participation in conduct motivated by a sincerely-held religious belief; or (3) places substantial pressure on the prisoner to not engage in conduct motivated by his sincerely-held religious belief or to engage in conduct contrary to his

sincerely-held religious belief (*e.g.*, where the government presents the prisoner with an illusory choice where the only realistically possible course of action trenches on his sincerely-held religious belief). 600 F.3d at 1315; 42 U.S.C. § 2000–1(a).

As explained *supra*, as to Plaintiff's claim for injunctive relief to prevent other inmates who have not shown their "sincere Jewish beliefs" from participating in Passover services, the court once again finds that Plaintiff has failed to bear the initial burden of establishing "the prima facie existence" of a substantial burden on *his* religious exercise. *Warsoldier*, 418 F.3d at 995. Therefore, Plaintiff's RLUIPA claim in this regard should be dismissed for failure to state a claim.

On the other hand, Plaintiff alleges for approximately a year (at the time Plaintiff filed his Complaint), he had been deprived of the ability freely to exercise mandatory religious obligations by the defendants' failure to allow religious services and necessary items to fulfill the services. (Compl. at 4–5.) Thus, the court liberally construes[1] the Complaint to allege a continuous and ongoing denial of religious services and necessary items to plausibly state the existence of a substantial burden on the exercise of his sincerely held religious beliefs.

RLUIPA provides that a substantial burden on Plaintiff's religious exercise is permissible only if Defendants can show that the "imposition of the burden on [the Plaintiff] (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of

---

[1]The court recognizes the inherent contradiction in Plaintiff's claim that other inmates *are* participating in Jewish religious services in contrast to his claim that Jewish religious services are denied.

furthering that compelling governmental interest." 42 U.S.C. § 2000cc–1(b)(1); *Abdulhaseeb*, 600 F.3d at 1312.  Defendants have wholly failed to address whether the alleged burden furthers a compelling governmental interest or whether it is the least restrictive means to further such interest.  Therefore, Defendants' motion to dismiss Plaintiff's RLUIPA claim related to the defendants' alleged failure to allow religious services and necessary items for Plaintiff to fulfill the services is properly denied.

### C.     *Retaliation Claim*

Plaintiff also alleges Defendants Reynolds and Cosner retaliated against him for exercising his constitutional rights to access the courts or file grievances in violation of the First Amendment. (Compl. at 4.)  Defendants argue that Plaintiff's retaliation claim should be dismissed for failure to state a claim upon which relief can be granted.  (Mot. at 8–13.)

A plaintiff asserting a retaliation claim against the government for exercising his First Amendment rights must prove the following elements:

> (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1203 (10th Cir. 2007) (citing *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000)).  To establish a claim for retaliation, a plaintiff must show that "but for the retaliatory motive, the incidents to which he refers . . . would not have taken place."  *Smith v. Maschner*, 899 F.2d 940, 949–50 (10th Cir. 1990) (quotations omitted).

In his Complaint, Plaintiff alleges he entered the law library with certain documents, and Defendant Cosner "scrutinized" the documents for contraband. (Compl. at 7, ¶ 1.) Defendant Cosner noticed one of the documents in Plaintiff's possession was a legal document containing the name of another inmate in the caption, and Defendant Cosner informed Plaintiff he could not have the document in his possession. (*Id.*) Plaintiff told Defendant Cosner he would file a grievance related to this incident. (*Id.*) Plaintiff alleges Defendants Cosner and Reynolds discussed the situation, and after a few minutes Plaintiff again was advised that he would not be able to bring the contraband items into the libarary or he "would be written up/infracted . . . ." Plaintiff told the defendants "he would be returning to court o deal with" the matter. (*Id.*¶ 2.)

Plaintiff alleges after about forty minutes, Defendant Cosner asked Plaintiff "whose name was on the documents he possessed." (*Id.*, ¶ 3.) Plaintiff states, "realizing there might be a problem[, he] had given the documents to another inmate and asked him to return them to the unit so there would [not] be any other problems." (*Id.*) Plaintiff states he told Defendant Cosner "he didn't have any idea what she was speaking about," and then Defendant Cosner called security and had Plaintiff and all other inmates in the law library "shook down." (*Id.*) Plaintiff contends Defendant Cosner then wrote him up in an attempt to have him removed from the incentive living unit where he currently is housed. (*Id.*) Plaintiff states he later grieved the issue, and his grievance was denied. (*Id.*, ¶ 4.)

There are several problems with Plaintiff's retaliation claim. First, though Plaintiff states he was allowed to have the document in his possession pursuant to a settlement reached in another case, there is no allegation that Plaintiff's possession of the documents was

constitutionally protected activity.[2]  Moreover, though access to the courts and the right to petition the government for redress of grievances is a fundamental right protected by the Constitution, *Nordgren v. Milliken*, 762 F.2d 851, 853 (10th Cir. 1985), there is no allegation that Plaintiff was engaged in this protected activity prior to Defendants' alleged actions.  Second, there is no allegation that Plaintiff later was "chilled" from engaging in a constitutionally protected activity, such as filing a grievance or from accessing the courts.  In fact, Plaintiff specifically states that following the library incident, he filed a grievance against Defendants Cosner and Reynolds.  (*Id.*)  Finally, though the alleged "shake down" may be considered an adverse action, there is no allegation that Defendant Cosner initiated the shake down as a response to Plaintiff's exercise of constitutionally protected conduct.  Rather, Plaintiff concedes that the alleged shake down was due to his possession of legal documents belonging to another inmate with which he "realiz[ed] there might be a problem," and due to his surreptitious removal of and subsequent failure to provide Defendant Cosner with the documents.  Thus, Plaintiff has failed to state any facts alleging that the defendants' retaliatory motives related to any constitutionally protected activity were the "but for" cause of her actions.

For the foregoing reasons, Plaintiff's retaliation claims against Defendants Cosner and Reynolds should be dismissed for failure to state a claim upon which relief can be granted.

---

[2]To the extent Plaintiff had the documents in his possession to act as a "jailhouse lawyer" or to conduct legal work for another inmate, an inmate "does not have a protected interest in providing legal representation to other inmates." *Smith v. Maschner*, 899 F.2d 940, 950 (10th Cir. 1990).

16

### D. *Qualified Immunity*

Defendants Cosner and Reynolds assert they are entitled to qualified immunity as to claims for monetary damages against them in their individual capacities.

Whether a defendant is entitled to qualified immunity is a legal question. *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007).

> Resolution of a dispositive motion based on qualified immunity involves a two-pronged inquiry. First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, . . . the court must decide whether the right at issue was clearly established at the time of the defendant's alleged misconduct. With regard to this second [prong], the relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful under the circumstances presented.

*Herrera v. City of Albuquerque,* 589 F.3d 1064, 1070 (10th Cir. 2009) (internal quotation marks and citations omitted). "A reviewing court may exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* "Qualified immunity is applicable unless" the plaintiff can satisfy both prongs of the inquiry. *Id.* Having concluded above that Plaintiff has failed to state a claim that Defendants Cosner and Reynolds violated any constitutional right, these defendants are entitled to qualified immunity.

WHEREFORE, for the foregoing reasons, the court respectfully

RECOMMENDS that Defendants' "Motion to Dismiss in Part Pursuant to Fed. R. Civ. P. 12(b)(6)" (Doc. No. 11 ) be GRANTED in part and DENIED in part, as follows:

1. Plaintiff's official-capacity claims for monetary relief against the CDOC defendants should be dismissed for lack of subject matter jurisdiction;

2. Plaintiff's First Amendment and RLUIPA claims for injunctive relief to prevent other inmates who have not shown their "sincere Jewish beliefs" from participating in Passover services should be dismissed for failure to state a claim upon which relief can be granted;

3. Plaintiff's First Amendment and RLUIPA claims as they relate to obtaining items Plaintiff feels are necessary to practice his Jewish faith and to the alleged deprivation of religious services should proceed as to Defendants Sokol and the CDOC;

4. Plaintiff's retaliation claims against Defendants Cosner and Reynolds should be dismissed for failure to state a claim upon which relief can be granted; and

5. Defendants Cosner and Reynolds should be granted qualified immunity as to claims for monetary damages against them in their individual capacities.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's

report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc*., 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 4th day of January, 2012.

BY THE COURT:

Kathleen M Tafoya
United States Magistrate Judge