IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable R. Brooke Jackson

Civil Action No. 11-cv-01497-RBJ-KMT

DAVID K. JENNER,

      Plaintiff,

v.

CAPT. WILLIAM SOKOL (official capacity),
AMY COSNER (individual and official capacity),
TERESA REYNOLDS (individual and official capacity), and
COLORADO DEPARTMENT OF CORRECTIONS (official capacity),

      Defendants.

---

**ORDER ON VARIOUS PENDING MOTIONS**

---

On August 29, 2011 defendants filed a partial motion to dismiss [Doc. #11], which was referred to Magistrate Judge Tafoya that same day by Judge Martinez.  Several additional motions have been filed, three of which are ripe for ruling at this point: plaintiff's formal objection to defendants' expert witness disclosure and motion to strike the experts [Doc. #44]; defendants' amended motion for extension of time to extend dispositive motions deadline pending ruling on the motion to dismiss [Doc. #73]; and defendants' amended motion to strike motion for summary judgment or alternatively to stay briefing [Doc. #74].

Plaintiff filed no response to defendants' partial motion to dismiss, and on January 4, 2012 a report and recommendation ("the Recommendation") issued in which it was recommended that plaintiff's claims regarding "insincere practitioners" of Judaism be dismissed for failure to state a claim.  [Doc. #32].  Additionally it was recommended that: plaintiff's claim for monetary damages be dismissed as barred by the Eleventh Amendment; his retaliation claim

1

be dismissed for failure to state a claim; and that defendants were entitled to qualified immunity on all claims for monetary damages against defendants Cosner and Reynolds in their individual capacities. The magistrate judge found that plaintiff had pled sufficient facts to state a claim with regard to his First Amendment and Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1(a)(1)-(2), claims based on the lack of necessary religious food/items.

On January 18, 2012 plaintiff was granted an extension of time to file his objections to the Recommendation. [Doc. #38]. The electronic record shows that on January 26, 2012 the Court received a document entitled "Plaintiff's Response to Defendants' Motion to Dismiss in Part," [Doc. #42], addressing Doc. #11. In addition to responding to the motion to dismiss he filed an Amended Complaint. [Doc. #43]. The Magistrate Judge appropriately denied this under Fed. R. Civ. P. 15(a)(2). [Doc. #47]. Mr. Jenner has subsequently moved for leave to amend his complaint, which was referred to Magistrate Judge Tafoya and is the subject of a recent Report and Recommendation. [Doc. # 80]. Subsequently, on January 26, 2012, recognizing that the Recommendation had issued, plaintiff filed his formal objections to the Recommendation. [Doc. #46].

In light of plaintiff's objections to the Recommendation, those parts objected to are reviewed under a *de novo* standard, while the undisputed portions will be affirmed and adopted as the order of this Court in light of the magistrate judge's thorough and well-reasoned analysis. *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991)(citing *Thomas v. Arn*, 474 U.S. 140, 150 (1985)(stating that "[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings")).

**Facts.**

The plaintiff is incarcerated within the Colorado Department of Corrections ("CDOC"). He practices Judaism, and his claims against the defendants relate to his faith with the exception of his retaliation claim. Plaintiff claims that his rights have been violated under both the First Amendment and RLUIPA, because defendants have (1) permitted "insincere practitioners" to participate in Jewish services, (2) prevented him from obtaining items necessary to observe his religion, and (3) up until a certain point prevented him from conducting his religious services at all.

Additionally he claims that he suffered retaliation in violation of his First Amendment rights by defendants Cosner and Reynolds. He attempted to enter the law library with certain documents which were discovered to contain legal documents in another person's name. Defendants Cosner and Reynolds instructed him not to bring documents like that into the law library again or he would be written up. He alleges that he informed them he would grieve them over this situation and would take it to court. He gave the documents to an unnamed inmate to remove. He further alleges that roughly 40 minutes later he was asked by Cosner for the documents, to which he feigned ignorance given the physical proximity of the questioning to other inmates and plaintiff's desire not to be labeled a "snitch" or "rat." Plaintiff and the other inmates in the law library were then "shaken down" in search of the documents. He alleges that afterward defendant Cosner wrote him up in an attempt to have him removed from the incentive living unit. Plaintiff's grievance concerning this matter was denied. Plaintiff claims he had the documents pursuant to a settlement in another case, and that he was also permitted to have them

under *Hunsaker v. Warden of the Sterling Corr. Facility,* 2010 Colo. App. LEXIS 259 (Colo.

App., February 25, 2010).[1]

**Standard of Review.**

In reviewing a motion to dismiss, the Court must accept the well-pleaded allegations of

the complaint as true and construe them in plaintiff's favor.  However, the facts alleged must be

enough to state a claim for relief that is plausible, not merely speculative.  *Bell Atlantic Corp. v.*

*Twombly,* 550 U.S. 544, 555, 570 (2007).  A plausible claim is a claim that "allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft*

*v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).  Allegations that are purely conclusory

need not be assumed to be true.  *Id.* at 1951.

Because plaintiff represents himself *pro se*, the Court "review[s] his pleadings and other

papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys."

*Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted).  However,

a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to

state a claim on which relief can be based."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.

1991).

**Conclusions.**

**Motion to Dismiss in Part [#11]; Recommendation of Magistrate Judge [#32].**

Mr. Jenner raised no objection to the Recommendation with regard to the Eleventh

Amendment prohibition against suit for monetary damages against the defendants in their official

capacities.  Nor does he object to the Recommendation with regard to his First Amendment and

RLUIPA claims that he was prevented from conducting his religious services altogether or that

---

[1] This is an unpublished state court opinion which has not been presented to the Court and to which the Court does not have access.

he was prevented from purchasing the necessary religious food/items for his services.[2]  The Court does not address these issues.

Plaintiff's first argument is that the Recommendation should be rejected *in toto* because his timely response was not considered.  Attached to his response was a page from the September 23, 2011 "OUTGOING RESTRICTED INSPECTION MAIL LOG" in which there are three entries on September 22, 2011 corresponding to Mr. Jenner's name.  Doc. #42.  There is, however, no indication to what those entries relate.  The Court will take Mr. Jenner at his word that his response would have been timely.  Regardless, Mr. Jenner essentially gets what he wants.  He only objects to certain parts of the Recommendation, and those will be reviewed *de novo*, including the arguments made in his response.  Furthermore, it is clear from the Recommendation that Magistrate Judge Tafoya conducted a thorough claim by claim analysis of plaintiff's complaint and apparently did not factor in the lack of a response at that time.

First Amendment Violation Based on the Participation of "Insincere" Inmates.

Mr. Jenner claims that his right to free exercise of his religion has been violated where defendants permit insincere – in Mr. Jenner's opinion – inmates to participate in Jewish religious services.  The Court engages in a two-step analysis for a claim of a First Amendment violation.  An inmate must show that a prison regulation "substantially burdened . . . sincerely held religious beliefs."  If he does, then the prison officials may "identify the legitimate penological interest that justified the impinging conduct."  *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007)(internal citations and quotations omitted).  If that has been done, the burden shifts back to plaintiff to "show that these articulated concerns were irrational."  *Id*. at 1219 n.2.  At that point the Court analyzes six factors set out in *Turner v. Safley*, 482 U.S. 78, 89-91 (1987):

---

[2] In their response to plaintiff's objection defendants point out that it was not their intent to move to dismiss the latter claims.

(1) whether a rational connection exists between the prison policy regulation and a legitimate governmental interest advanced as its justification; (2) whether alternative means of exercising the right are available notwithstanding the policy or regulation; (3) what effect accommodating the exercise of the right would have on guards, other prisoners, and prison resources generally; and (4) whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights.

*Id.* (citation omitted).

Defendants do not challenge whether Mr. Jenner's beliefs are sincerely held. They dispute that his beliefs have been substantially burdened. As the Court understands plaintiff's claim, he feels the participation of insincere inmates not only cheapens his faith and the religious ceremonies/services, it burdens his exercise of religion because CDOC requires him to distribute items required for the event to those insincere participants. The Court assumes that Mr. Jenner's frustration is sincere. However, this is not the type of burden contemplated by the First Amendment. *Martinez v. Ortiz*, No. 05CV138, 2006 WL 771326, at **3-5 (D. Colo. March 20, 2006)(not reported)(finding that a permanent injunction preventing non-native Lakotas from participating in traditional Lakota ceremonies would potentially violate those inmates' right to free exercise and should not issue). Mr. Jenner's, like any inmates', exercise of his religion is something personal to him and is not substantially burdened by the attendance of others, even where their beliefs may be insincere and their presence annoying.

RLUIPA Violation Based on the Participation of Inmates with Insincere Beliefs.

RLUIPA is similar to the First Amendment, except it imposes a heavier burden on institutions to justify the impingement. *See Jotunbane v. Sedillo*, No. CIV 06–809 JB/RHS, 2010 WL 1781922, at *5 (D.N.M. Apr. 20, 2010). RLUIPA states that a government shall not "impose a substantial burden" on the "religious exercise" of inmates unless it shows that the

burden "further[s] a compelling governmental interest . . . by the least restrictive means."  42 U.S.C. § 2000cc-1.

To survive a motion to dismiss, a RLUIPA complaint must adequately allege the following: (1) that the plaintiff wishes to engage in a religious exercise; (2) that this wish is motivated by a sincerely held belief; and (3) that the exercise is subject to a substantial burden imposed by the government.  *See Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1312 (10th Cir. 2010).  There is no dispute that plaintiff has satisfactorily alleged the first and second elements. Defendants argue that plaintiff cannot satisfy the third element.

As the Recommendation stated, "a burden on religious exercise is 'substantial' under RLUIPA if it denies a plaintiff 'reasonable opportunities' to engage in a religious exercise." *Caruso v. Zenon*, No. 95–MK–1578, 2005 WL 5957978, at *17 (D.Colo. July 25, 2005).  A burden moves from an inconvenience to substantial

> when a government (1) requires participation in an activity prohibited by a sincerely held religious belief, or (2) prevents participation in conduct motivated by a sincerely held religious belief, or (3) places substantial pressure on an adherent either not to engage in conduct motivated by a sincerely held religious belief or to engage in conduct contrary to a sincerely held religious belief.

*Abdulhaseeb*, 600 F.3d at 1315.

Mr. Jenner has not alleged facts that satisfy the Tenth Circuit's definition of "substantial burden."  As noted earlier, the participation of inmates that Mr. Jenner feels are insincere may frustrate and annoy him, but that does not constitute a substantial burden on his exercise of religion.  Moreover, while he might be inconvenienced by having to distribute the necessary religious items and food available at his facility to the allegedly insincere inmates, he has not demonstrated that this inconvenience is actually a substantial burden on his religious liberty.

Plaintiff's Retaliation Claim.

The First Amendment protects against retaliation for exercising one's constitutional rights. *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998)(internal quotation marks and citation omitted). The Tenth Circuit has established the elements of a retaliation claim:

> (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1203 (10th Cir. 2007). A plaintiff must show that "but for the retaliatory motive, the incidents to which he refers . . . would not have taken place." *Smith v. Maschner*, 899 F.2d 940, 949-950 (10th Cir. 1990)(quotations omitted).

Plaintiff has not submitted a copy of his settlement in 03-cv-01344-MSK or the *Hunsaker* opinion out of the Colorado Court of Appeals which he suggests support his argument. Regardless, the Court agrees with the Recommendation that possessing legal documents captioned in another inmate's name is not constitutionally protected. *See Smith*, 899 F.2d at 950 (10th Cir. 1990)(inmates don't have a protected legal interest in acting as a jailhouse lawyer).[3]

Plaintiff also argues that there was retaliation based upon his statements that he was going to pursue a grievance and take the matter to court. He argues that it is "clearly established that denying a person the ability to report an alleged constitutional violation through a grievance or complaint is an infringement of protected speech," citing *Meyer v. Bd. of Cty. Comm's. of Harper Cty.*, 482 F.3d 1232, 1243 (10th Cir. 2007) in support of his proposition. However, this is not a clear case of the defendants impinging plaintiff's right of access to the courts under the First Amendment. Instead, plaintiff's allegation essentially is that once he notified defendants

---

[3] Plaintiff points out that he never claimed to be acting as a jailhouse lawyer, but he also never states why he had or needed the documents in question.

Cosner and Reynolds that he planned to grieve them and potentially take legal action against them, they immediately retaliated against him.

A large and insurmountable problem with plaintiff's retaliation claim, as pointed out in the Recommendation, is the causation element.  Plaintiff did not allege facts that show Defendant Cosner – and Reynolds to the extent she was involved – retaliated instead of acting out of concern for prison regulations that prohibit the possession of legal documents captioned in other inmates' names.  There is nothing to indicate that the "shakedown" of which plaintiff complains was motivated other than by a desire to locate the documents in question per prison regulations. Plaintiff has not sufficiently alleged that retaliation was a "but for" cause of defendants' actions.

Qualified Immunity.

The qualified immunity doctrine "shields government officials performing discretionary functions from liability for damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Toevs v. Reid*, 646 F.3d 752, 755 (10th Cir. 2011) (internal citations omitted).  To overcome a defense of qualified immunity, the plaintiff "must show that the defendant's actions violated a specific statutory or constitutional right, and that the constitutional or statutory rights the defendant allegedly violated were clearly established at the time of the conduct at issue."  *Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006).

Regarding the first part of the two-part test, "a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right.  *Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009).  This means that the Court must determine whether plaintiff "sufficiently asserted the violation of a constitutional right."  *Lighton v. University of Utah,* 209 F.3d 1213, 1221 (10th Cir. 2000).  Plaintiff "must do more than

abstractly identify an established right, but must specifically identify the right and conduct . . . which violated that right." *Ibid.* If the violation of a constitutional right is sufficiently alleged, then defendant bears the burden of showing that there are no material issues of fact that would defeat his claim of qualified immunity." *Ibid.*

With respect to the second test, a right is clearly established if it would have been "clear to a reasonable [person] that his conduct was unlawful under the circumstances presented." *Herrera,* 589 F. 3d at 1070; *see also Saucier v. Katz,* 533 U.S. 194, 202 (2001).

Because the Court has previously found that Mr. Jenner's First Amendment rights were not violated by defendants Cosner and Reynolds, they are entitled to qualified immunity on plaintiff's claims for monetary damages against them in their individual capacities.

**Plaintiff's Formal Objections to Defendants' Expert Witness Disclosures and to Strike Expert Witnesses [#44].**

Plaintiff objects to and moves to strike defendants' expert witness disclosures for a variety of reasons: first, defendants disclosed two rebuttal witnesses as opposed to the one allowed by the court; next, the disclosures were late, filed November 29, 2011 despite the expert disclosure deadline of October 28, 2011; and finally, the disclosures do not comply with Fed. R. Civ. P. 26(a)(2)(B) because the disclosure did not contain an expert report, is not signed by the expert and does not disclose what cases the expert has testified in over the last four years.

Defendants' filed amended expert disclosures disclosing only one expert, but plaintiff alleges he did not receive the amended disclosure. Plaintiff's motion with regard to the number of experts is moot. In response to the timeliness of the disclosures, defendants assert that the expert is a rebuttal witness and therefore the disclosure was timely pursuant to the November 30, 2011 deadline for disclosure of rebuttal experts. The Court agrees and will strictly hold

defendants to this position.  Finally, defendants argue that because this witness is a "non-retained expert" his disclosure is not subject to the requirements of Rule 26(a)(2)(B).

Rule 26(a)(2)(B) requires a written report accompanying the disclosure of a witness that is "one retained or specifically employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony."  The Court will not reach the merits of the argument because it finds, as defendants argued, that plaintiff failed to satisfy the requirement in Fed. R. Civ. P. 37(a)(1) of discussing his objection with opposing counsel before filing the present motion.  Therefore, plaintiff's motion is denied.

**[Defendants'] Amended Motion to Extend Dispositive Motions Deadline Pending a Ruling on the Motion to Dismiss in Part [#73].**

Defendants request that the deadline for filing dispositive motions be reset for 45 days after the Court issues a ruling on defendants' partial motion to dismiss.  Defendants' motion is denied as they failed to satisfy the requirement in D.C.COLO.LCivR 6.1(D) that the motion "state a date certain for the requested extension of time."

**[Defendants'] Amended Motion to Strike Plaintiff's Motion for Summary Judgment or Alternatively to Stay Briefing [#74].**

Defendants' argument is that plaintiff's motion for summary judgment is premature in light of defendants' pending partial motion to dismiss, resolved in this order, and plaintiff's motion for leave to amend his complaint.  Defendants request that the Court strike plaintiff's motion for summary judgment without prejudice with leave to re-file after an order addressing the two motions has issued.  The Court finds that the present order moots defendants' motion. Instead of striking plaintiff's motion for summary judgment, defendants must only respond to

those portions that have survived this order.  Defendants' alternate request is also moot, as they have yet to respond to plaintiff's motion for summary judgment.

**Order.**

1. The Recommendation [Doc. #32] is AFFIRMED and ADOPTED with respect to plaintiff's Eleventh Amendment claim, his First Amendment claim, and his RLUIPA claims that he was prevented from conducting his religious services altogether or that he was prevented from purchasing the necessary religious food/items for his services.

2. Defendants' Motion to Dismiss [Doc. #11] is GRANTED IN PART AND DENIED IN PART.

   o It is DENIED with regard to the issues listed in paragraph 1 of this Order.

   o It is GRANTED with respect to plaintiff's First Amendment and RLUIPA claims regarding insincere inmates.

   o It is GRANTED with respect to plaintiff's retaliation claim against defendants Cosner and Reynolds.

   o It is GRANTED with respect to defendants Cosner and Reynolds' entitlement to qualified immunity as to plaintiff's claims for monetary damages against them in their individual capacity.

3. Plaintiff's Motion Regarding Defendants' Expert Witness Disclosures [Doc. #44] is DENIED.

4. Defendants' Amended Motion for Extension of Time Regarding the Dispositive Motions Deadline [Doc. #73] is DENIED.

5. Defendants' Amended Motion Regarding Plaintiff's Motion for Summary Judgment [Doc.74] is DENIED.

DATED this 17th day of April, 2012.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge